PILLSBURY WINTHROP SHAW PITTMAN LLP
MICHAEL E. ZELIGER (SBN 271118)
michael.zeliger@pillsburylaw.com
AUDREY LO (SBN 253738)
audrey.lo@pillsburylaw.com
2550 Hanover Street
Palo Alto, CA 94304-1115
Telephone: 650.233.4500
Facsimile: 650.233.4545

Attorneys for Plaintiff
REVIVERMX, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REVIVERMX, INC.,<br>Plaintiff,<br>vs.<br>HAROLD PARKER, individually,<br>Defendant. | Case No. 20-cv-8490<br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br>**DEMAND FOR JURY TRIAL** |

1. Plaintiff ReviverMx, Inc. ("Plaintiff" or "Reviver") seeks a declaratory judgment of noninfringement of U.S. Patent No. 7,096,102 ("'102 Patent" or "Patent-in-Suit").

**NATURE AND HISTORY OF THE ACTION**

2. This is an action arising under the Declaratory Judgement Act, 28 U.S.C. § 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*. Reviver brings this action for a declaration that it does not infringe any claim of the '102 Patent.

3. Reviver requests this relief because Defendant Mr. Parker claims that Reviver infringes the '102 Patent by making, using, selling, offering for sale, and/or importing the following products: Rplate and Rplate Pro (collectively, "Accused Products"). Mr. Parker' affirmative allegations of infringement of the '102 Patent by the Accused Products has created a justiciable controversy between Reviver and Mr. Parker.

4. Mr. Parker filed suit against Reviver on January 31, 2020 alleging infringement of the '102 Patent "based on [Reviver's] unauthorized commercial use, importation, offer for sale, and sale of infringing products and services in the United States." Exh. A at ¶ 1. In response, Reviver filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) on March 30, 2020. Exh. B.

5. While Reviver's motion to dismiss was pending, Mr. Parker corresponded with counsel for Reviver, indicating his intent to continue with the lawsuit. Exh. C at 1 ("Since [Reviver is] not interested in responding at this time we will proceed with the lawsuit. Someone will be in touch with them soon."; *id.* ("I've spoken with [my counsel of record's] law firm in regards to my decision to proceed with the lawsuit. The defendant will be hearing from someone soon.")

6. On April 28, 2020, Mr. Parker filed a voluntary dismissal of the lawsuit, without prejudice. Exh. D.

7. About one month later, on May 26, 2020, Mr. Parker published a video on YouTube entitled "Reviver Auto Stole the RPlate. Harold C. Parker Sr. the original inventor is fighting back." https://www.youtube.com/watch?v=176g_URBzlQ. In it, he states, "I'm a fighter. I will fight to the very last end" and ". . . this is a message for any company that tries to steal and sell my product or you have business with them. I'm coming for you. I'm filing lawsuits. Make no mistake about it." *Id.*

8. Since then, and as recently as the end of November, Mr. Parker has repeatedly posted to social media, linking his YouTube video and stating that "[Founder and CEO] Boston Neville [sic] is a thief and liar. . . . I will be exposing you to the world" and "I refuse to allow a thief to get away with taking credit for my life's work." *See e.g.*, Exhs. E, F.

**THE PARTIES**

9. Plaintiff ReviverMx, Inc. is a Delaware corporation with its principal place of business located at 4170 Douglas Blvd., Suite 200, Granite Bay, California 95746.

10. On information and belief, Plaintiff Harold Parker is *sui juris* and is a citizen of the State of North Carolina.

**JURISDICTION**

11. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the patent laws of the United States, 35 U.S.C. §§ 1-390.

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a). As a result of Mr. Parker's history of patent enforcement against Reviver and his continuing public statements threatening litigation, an immediate, real, and justiciable controversy exists between Reviver and Mr. Parker as to whether Reviver is infringing or has infringed the '102 Patent.

13. This Court has personal jurisdiction over defendant Mr. Parker. Mr. Parker purposefully availed himself of the benefits of this District by affirmatively filing its Complaint for Patent Infringement of the '102 Patent against Reviver on January 31, 2020. *Harold Parker v. ReviverMx, Inc.*, Case No.: 3:20-cv-735 (N.D. Cal.); Exh. A. Reviver's claim arises out of Mr. Parker's activities within this District.

14. Venue is proper in this District under 28 U.S.C. Section 1391 because a substantial part of the events giving rise to Reviver's claim occurred in this District.

**THE PATENT-IN-SUIT**

15. The '102 patent, entitled "Motor Vehicle License Plate with Integral Wireless Tracking and Data Dissemination Device," states on its face that it issued on August 22, 2006. Mr. Parker claims that he is the owner of the entire right, title, and interest in the '102 Patent. Exh. A at ¶ 14. A true and correct copy of the '102 patent is attached as Exhibit G.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment of Noninfringement of the '102 Patent)**

16. Reviver repeats and realleges each and every allegation contained in paragraphs 1 through 15 of this Complaint as if fully set forth herein.

17. Reviver does not directly or indirectly infringe the '102 Patent, either literally or under the doctrine of equivalents, at least because the Accused Products do not comprise:

- "a strip antenna projecting from said plate, said strip antenna receiving and transmitting digital information via a radio frequency signal";

- "an enclosure comprising a power supply operatively coupled to a controller, an alarm module, a transmitter, a receiver, a multiplexer and a memory block, wherein generated power bus signals are routed from said power supply to said alarm module, said transmitter, said receiver and said controller"; and
- "a querying antenna provided on at least one law enforcement vehicle, said querying antenna producing a complimentary radio frequency signal interacting with said strip antenna so as to receive and transmit digital information there between";

nor do the Accused Products

- "provide[] enhanced efficiency of law enforcement queries."

18. No third party infringes any claim of the '102 Patent by using or selling the Accused Products. Reviver has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. The Accused Products are not designed for use in any combination which infringes any claim of the '102 Patent. To the contrary, each has substantial uses that do not infringe any claim of the '102 Patent.

19. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Reviver and Mr. Parker regarding whether Reviver infringes any claim of the '102 patent.

20. Reviver seeks a judgment declaring that Reviver does not directly or indirectly infringe any claim of the '102 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Reviver respectfully requests the following relief:

A. That the Court enter a judgment declaring that the Accused Products do not infringe, directly or indirectly, the Patent-in-Suit;

B. That the Court enter a judgment declaring that Reviver does not induce infringement of the Patent-in-Suit;

C. That the Court enter a judgment declaring that Reviver does not contributorily infringe on the Patent-in-Suit;

D. That the Court find this is an exceptional case under 35 U.S.C. § 285;

E. That the Court award Reviver its costs and attorneys' fees in connection with this action; and

F. That the Court grant Reviver such further and additional relief as the Court deems just and proper.

**JURY DEMAND**

Reviver hereby demands a jury trial on all issues and claims so triable.

Dated: December 1, 2020

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Michael E. Zeliger*

By: MICHAEL E. ZELIGER
AUDREY LO

Attorneys for Plaintiff ReviverMx, Inc.

# Exhibit A

Case 3:20-cv-00735 Document 1 Filed 01/31/20 Page 1 of 7

Coleman W. Watson, Esq. (SBN 266015)
coleman@watsonllp.com
WATSON LLP
601 S. Figueroa Street, Suite 4050
Los Angeles, CA 90017
Telephone: 213.228.3233
Facsimile: 213.330.4222

*Attorneys for Plaintiff,*
*Harold Parker*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| HAROLD PARKER, individually,<br>Plaintiff,<br>vs.<br>REVIVERMX, INC.,<br>Defendant. | Case No.: 3:20-cv-735<br>**COMPLAINT FOR PATENT INFRINGEMENT**<br>**INJUNCTIVE RELIEF DEMANDED**<br>**JURY TRIAL DEMANDED** |

Plaintiff, HAROLD PARKER, sues Defendant, REVIVERMX, INC., and alleges:

## PRELIMINARY STATEMENT

1. This is an action for infringement of United States Patent No. 7,096,102 (the ‘102 Patent) under the Patent Act, 35 U.S.C. § 271, *et seq.*, based on Defendant’s unauthorized commercial use, importation, offer for sale, and sale of infringing products and services in the United States.

2. In today’s modern transportation industry there have been many forms of technology that implement and maintain the safety and survival of car drivers. Having a redundant and advance tracking system that can reduce the

chances of traffic violators, terrorists, and criminals from committing crimes is imperative in such a revolutionary age. Plaintiff's Digital Tag Tracking System ("DTTS") is a highly intelligent wireless display device with the combination of several services used for the safety and protection of every car and driver, including digital registration with State Departments of Motor Vehicles and geo-location features for use by State Highway Patrols.

3. Through instant data transmission, DTTS allows law enforcement officers to query encrypted data and a profile concerning any driver, all from a digital license plate assigned a unique IP address. Through this technology, State Highway Patrol Officers are armed with a unique device to track traffic violators and locate stolen cars, among other things.

4. Plaintiff is an electrical engineer who invented DTTS; Defendant infringed the technology to claim it as its own in an effort to capitalize monetarily from the invention, all without compensation to Plaintiff.

## PARTIES

5. Plaintiff, HAROLD PARKER, is *sui juris* and is a citizen of the State of North Carolina.

6. Defendant, REVIVERMX, INC., is a foreign corporation, organized under the laws of the State of Delaware and with its principal place of business located in Foster City, California.

## SUBJECT MATTER JURISDICTION

7. This court has original jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this action involves a federal question relating to the '102 Patent.

## PERSONAL JURISDICTION

8. The court has general *in personam* jurisdiction over Defendant because Defendant is present or found in this district in San Mateo, County.

## VENUE

9. Venue is proper in this court, pursuant to 28 U.S.C. § 1400(b), because Defendant has committed acts of infringement in this district and has a regular and established place of business in this district.

## INTRADISTRICT ASSIGNMENT

10. Pursuant to Local Civil Rule 3-2(d), this action is properly assigned to the San Francisco Division because a substantial part of the events or omissions giving rise to this action occurred in San Mateo County, California.

## GENERAL ALLEGATIONS

### *The Asserted Patent*

11. On August 22, 2006, the United States Patent & Trademark Office ("USPTO") duly and legally issued the '102 Patent, entitled "Motor Vehicle License Plate with Integral Wireless Tracking and Data Dissemination Device." The '102 Patent embodies DTTS.

12. A true and authentic copy of the '102 Patent is attached hereto as **Exhibit A** and incorporated herein by reference.

13. The '102 Patent claims, among other things, an apparatus that provides for the wireless receiving, storing, and dissemination of digital data as part of a motor vehicle license plate.

14. Plaintiff is the owner of the entire right, title, and interest in the '102 Patent.

15. Plaintiff is a long-time inventor and entrepreneur. The fruits of his inventive labors and technological foresight, DTTS, is now a foundational piece of intellectual property for the burgeoning digital license plate industry. In 2006, Plaintiff even took to the local TV airwaves to demonstrate a prototype of his invention, which was publicly available to Defendant for several years before it allegedly developed the technology underlying the RPlate products.

### *Defendant's Infringing Activities*

16. Defendant has and continues to infringe the '102 Patent by making, using, selling, and offering for sale its RPlate products in the United States.

17. Defendant's RPlate Essential and RPlate Pro products practice every limitation of Claim 1 of the '102 Patent, including but not limited to:

- Wireless connections to LTE technology including antennas on base stations;
- License plates affixed to motor vehicles;
- Use of legacy systems of vehicle identification including a license plate number and registration number;
- Microstrip antennas used in LTE networks to transmit digital information via radio frequency signals;
- Enclosures to house circuitry;
- Electrical cables connected to vehicle's electrical system;
- Fuses;
- Power supplies;
- Remote controllers to complete functions;
- Modules to change messaging on license plates and transmit GPS coordinates to wireless networks;
- Transmitters;
- Receivers;
- Multiplexer modules;
- Memory blocks to store license plate data;
- Interface with law enforcement and Government systems for queries.

18. Upon information and belief, Defendant has also been and is inducing infringement of the '102 Patent by actively and knowingly inducing numerous third party car dealerships (*e.g.*, Tesla, Pendragon North America, and Galpin Motors) to use, sell, or offer for sale Defendant's RPlate products that embody or

use the inventions claimed in the '102 Patent. Specifically, Defendant has reached tentative agreements with at least 28 State Departments of Motor Vehicles and Highway Patrol to authorize the use of its RPlate products. Upon authorization by the State Departments of Motor Vehicles and Highway Patrol, Defendant actively encouraged third party car dealerships located in those states to directly sell RPlate products to their consumers, all while knowing that these acts induced action and cause patent infringement by third party car dealerships.

19. Significantly, Defendant sought patent protection at the USPTO for its RPlate technology under Application No. 13/117,089 (Publication No. US 2011/0295697 A1), which such Application was rejected by the USPTO.

20. Defendant's infringing activities have caused Plaintiff significant harm and deprived him of lost profits and/or reasonable royalties for Defendant's sale of its RPlate products, including the RPlate Essential and RPlate Pro products.

21. All general and statutory conditions precedent to this action have either occurred or have been waived by operation of law.

22. This case is exceptional and, therefore, Plaintiff is entitled to an award of attorneys' fees, pursuant to 35 U.S.C. § 285.

## COUNT I

## PATENT INFRINGEMENT

23. Plaintiff re-alleges paragraphs 1 through 21 by reference, as though fully set forth herein.

24. Defendant has been and is infringing the '102 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, its RPlate products, including the RPlate Essential and RPlate Pro products, in violation of 35 U.S.C. § 271.

25. Upon information and belief, Defendant has known of the existence of the '102 Patent, and its acts of infringement have been willful and/or in disregard for the '102 Patent, without any reasonable basis for believing that it had a right to

Case 3:20-cv-00735 Document 1 Filed 01/31/20 Page 6 of 7

engage in the infringing conduct.

26. Defendant's acts of infringement of the '102 Patent have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation pursuant to 35 U.S.C. § 284.

27. Defendant's acts of infringement of the '102 Patent have caused and will continue to cause Plaintiff immediate and irreparable harm unless such infringing activities are also enjoined by this court pursuant to 35 U.S.C. § 283. Plaintiff has no adequate remedy at law.

28. Upon information and belief, the '102 Patent, at all times material, was and is in compliance with 35 U.S.C. § 287.

**WHEREFORE**, Plaintiff, HAROLD PARKER, demands judgment against Defendant, REVIVERMX, INC., and respectfully seeks the entry of an order (i) adjudging that Defendant has infringed the '102 Patent, in violation of 35 U.S.C. § 271; (ii) granting an injunction enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing the '102 Patent; (iii) ordering Defendant to account and pay damages adequate to compensate Plaintiff for Defendant's infringement of the '102 Patent, including for any infringing acts not presented at trial and pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284; (iv) ordering an accounting for any infringing sales not presented at trial and an award by the court of additional damages for any such infringing sales; (v) ordering that the damages award be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284; (vi) declaring this case exceptional and awarding Plaintiff his reasonable attorney fees, pursuant to 35 U.S.C. § 285; and (vii) awarding such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, HAROLD PARKER, hereby demands a trial by jury of all issues so triable pursuant Fed. R. Civ. P. 38.

**DATED** on January 31, 2020

Respectfully submitted,

WATSON LLP

*/s/ Coleman Watson*

**Coleman W. Watson, Esq.**
California Bar No. 266015
Florida Bar. No. 0087288
Georgia Bar No. 317133
New York Bar No. 4850004
coleman@watsonllp.com
docketing@watsonllp.com

**WATSON LLP**
601 S. Figueroa Street, Suite 4050
Los Angeles, CA 90017
Telephone: 213.228.3233
Facsimile: 213.330.4222

*Attorneys for Plaintiff,*
*Harold Parker*

# Exhibit B

PILLSBURY WINTHROP SHAW PITTMAN LLP
MICHAEL E. ZELIGER (SBN 271118)
michael.zeliger@pillsburylaw.com
AUDREY LO (SBN 253738)
audrey.lo@pillsburylaw.com
2550 Hanover Street
Palo Alto, CA 94304-1115
Telephone: 650.233.4500
Facsimile: 650.233.4545

Attorneys for Defendant
REVIVERMX, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND**

| | |
|---|---|
| HAROLD PARKER, individually<br><br>Plaintiff,<br><br>vs.<br><br>REVIVERMX, INC.<br><br>Defendant. | Case No. 20-CV-00735-HSG<br><br>**DEFENDANT REVIVERMX, INC.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM AND SUPPORTING MEMORANDUM**<br><br>Date: May 7, 2020<br>Time: 2:00 pm<br>Dept.: Ctrm. 2, 4th Floor<br><br>Trial Date:<br><br>Judge: The Hon. Haywood S. Gilliam, Jr. |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 7, 2020 at 2:00 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Hon. Haywood S. Gilliam, Jr. in the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 2 – 4th Floor, 1301 Clay Street, Oakland, CA 94612, Defendant ReviverMx, Inc. ("Defendant" or "Reviver") will move to dismiss the January 31, 2020 Complaint for Patent Infringement ("Complaint") filed by Plaintiff Harold Parker under Federal Rule 12(b)(6). Dkt. 1.

In his Complaint, Mr. Parker has failed to "state a claim upon which relief can be granted" in accordance with Fed. R. Civ. P. 12(b)(6). As such, Reviver respectfully requests that the Court grant its Motion to Dismiss the Complaint.

Dated: March 30, 2020

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: *_/s/ Michael E. Zeliger_*
MICHAEL E. ZELIGER
AUDREY LO
Attorneys for Defendant REVIVERMX, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Harold Parker accuses ReviverMx, Inc. ("Reviver" or "Defendant") of infringing Claim 1 of U.S. Patent No. 7,096,102 ("Patent-in-Suit" or "'102 Patent") through the manufacture, use, sale, and offer for sale of RPlate Essential and RPlate Pro products ("Accused Products"). However, Mr. Parker's Complaint falls short of providing factual support for all limitations of any claim of the asserted patent, as required to make a *prima facia* case of infringement. For those allegations that are present, Mr. Parker's Complaint simply summarizes the claim language without any factual basis. Mr. Parker's failure to adequately plead his accusations justifies dismissal of his Complaint.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a pleading that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Satisfying that standard requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating whether this requirement is met, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (citation omitted); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (courts need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Where "the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief," dismissal is warranted. *Iqbal*, 556 U.S. at 679 (citations omitted).

## III. ARGUMENT

### A. Mr. Parker's Allegations Fail to Support a Reasonable Inference of Direct Infringement of the Patent-in-Suit

Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." This Court has previously held that,

under the "*Iqbal* standard," a pleading that does not provide an "explanation as to the *how* or *why* the[] products infringe, does not lead to any inference that plaintiff may be entitled to relief." *PageMelding, Inc. v. ESPN, Inc.*, No. C 11-06263 WHA, 2012 WL 851574, at *2 (N.D. Cal. Mar. 13, 2012) (emphasis in original). Other decisions in this district similarly held that "if a complaint does not contain factual allegations that would permit a court to infer that a required element of the patent claim was satisfied, it is hard to see how infringement would be 'probable.'" *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-CV-06795-EJD, 2017 WL 2311407, at *3 (N.D. Cal. May 26, 2017); *see also AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1142–43 (N.D. Cal. 2019) (explaining that a "direct infringement claim 'does not satisfy the standards of *Twombly* and *Iqbal* where it does not at least contain factual allegations that the accused product practices every element of at least one exemplary claim'").

Reviver manufactures innovative electronic license plates that offer numerous advantages over traditional metal license plates. Mr. Parker's patent also concerns electronic license plates, but contains limitations that Reviver's technology does not use. A close inspection of Mr. Parker's pleadings suggests he either understands these features are missing, or at a minimum, failed to look.[1]

Mr. Parker's Complaint alleges direct infringement of Claim 1 of the Patent-in-Suit. Dkt. 1 ¶¶ 16-17. Among its limitations are the following:

- "an emergency notification signal routed from an anti-theft alarm system or a panic alarm in a parallel series through said enclosure";
- "an alarm module";
- "a querying antenna provided on at least one law enforcement vehicle, said querying antenna producing a complimentary radio frequency signal interacting with said strip antenna So as to receive and transmit digital information there between"; and
- "wherein said device provides enhanced efficiency of law enforcement queries."

While making the sweeping conclusion that "Defendant's RPlate Essential and RPlate Pro products practice every limitation of Claim 1 of the '102 Patent," Mr. Parker has not identified, or

[1] The Court need not accept this characterization of Reviver's technology to grant this motion. The point is that Mr. Parker has failed to even properly allege infringement.

even set forth a single factual allegation to support the identification of, any type of "emergency notification signal," "alarm module," or "querying antenna provided on at least one law enforcement vehicle" on the Accused Products. Dkt. 1 ¶ 17. In fact, he has made no attempt to identify via what, how, or why the Accused Products infringe these three limitations; instead, he completely ignores them.

Further, it appears that Mr. Parker also alleges that the Accused Products' "[i]nterface with law enforcement and Government systems for queries" is covered by the limitation disclosing "wherein said device provides enhanced efficiency of law enforcement queries." Mr. Parker's allegation amounts to little more than a conclusory statement mirroring the claim language. He provides no information regarding the "interface with law enforcement and Government systems," nor is there any explanation about how such "interface" serves to "provide[] enhanced efficiency of law enforcement queries."

Thus, because Mr. Parker fails to provide factual allegations that any of the Accused Products practices every element of at least one exemplary claim, his accusations of direct infringement are not sufficiently pled in accordance with *Twombly* and *Iqbal* and should be dismissed.

**B. Mr. Parker's Allegations Fail to Support a Reasonable Inference of Indirect Infringement of the Patent-in-Suit**

Induced infringement under 35 U.S.C. § 271(b) requires "knowledge of the patent in suit and knowledge of patent infringement." *Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA, 2020 WL 408988, at *3 (N.D. Cal. Jan. 24, 2020) (citing *Commil USA v. Cisco Sys.*, 575 U.S. 632, 135 S. Ct. 1920, 1926, 191 L.Ed.2d 883 (2015)). It further necessitates "a 'showing that [defendant] specifically intended [its] customers to infringe' the asserted patents. Specific intent means an 'intent to encourage infringement.'" *Fluidigm Corp.*, 2020 WL 408988, at *3 (citing *In re Bill of Lading Transmission*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *Takeda Pharms. v. West-Ward Pharm.*, 785 F.3d 625, 631 (Fed. Cir. 2015)). Moreover, "to prevail under a theory of indirect infringement, plaintiff must first prove that the defendants' actions led to direct infringement of the patent-in-suit."

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc. et al.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016) (internal citations omitted).

Mr. Parker alleges that Reviver "is inducing infringement of the '102 Patent by actively and knowingly inducing numerous third party car dealerships (e.g., Tesla, Pendragon North America, and Galpin Motors) to use, sell, or offer for sale Defendant's RPlate products that embody or use the inventions claimed in the '102 Patent." Dkt. 1 ¶ 18. Mr. Parker continues, "Defendant actively encouraged third party car dealerships . . . to directly sell RPlate products to their consumers, all while knowing that these acts induced action and cause patent infringement by third party car dealerships." *Id.*

The extent of Mr. Parker's factual support of his claim of induced infringement is his conclusory statement that Reviver "actively and knowingly" induced infringement and that it "actively encouraged" sales of the Accused Products. He fails to provide even a single factual allegation in support of his assertion to permit a plausible inference that Reviver had knowledge of the Patent-in-Suit, much less knowledge of infringement thereof, prior to service of the Complaint. *See also Iqbal*, 556 U.S. at 679 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Further, as demonstrated *supra*, Mr. Parker has failed to allege that Reviver's actions led to direct infringement of the Patent-in-Suit. As such, he has not adequately put forth the requisite elements of induced infringement.

Thus, the Complaint fails to sufficiently pleads facts plausibly supporting a claim for indirect infringement. *See PageMelding*, 2012 WL 851574, at *3 (dismissing claims of induced infringement, stating "there are insufficient facts supporting a plausible inference of active inducement. Plaintiff has alleged no facts to show a specific intent to encourage another's infringement.") (internal citations omitted); s*ee also Fluidigm Corp.*, 2020 WL 408988, at *4 ("the complaint's allegations that defendant 'knew and/or was willfully blind to the fact that it was inducing others, including customers ... to infringe ...' is a legal conclusion to be drawn *after* alleging supporting facts and is ignored") (citing *Twombly*, 550 U.S. at 555) (emphasis in original).

### C. Mr. Parker's Allegations Fail to Support a Reasonable Inference of Willful Infringement of the Patent-in-Suit

Enhanced damages for willful infringement are "generally reserved for egregious cases of culpable behavior" involving conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). "Courts in this district continually find knowledge a requirement for pre-suit enhanced damages." *Fluidigm Corp.*, 2020 WL 408988, at *5 (N.D. Cal. Jan. 24, 2020).

While a plaintiff "does not have to prove willfulness at the pleading stage, . . . they should allege more than a one-sentence prayer for willfulness relief under Section 284." *Straight Path IP Grp., Inc. v. Apple Inc.*, No. C 16-03582 WHA, 2017 WL 3967864, at *4 (N.D. Cal. Sept. 9, 2017) (internal citations omitted). Mr. Parker does just that, including a one-sentence prayer for willfulness relief, asking for the "damages award be increased up to three times the actual amount assessed." Dkt. 1 at 6. He alleges that

> [u]pon information and belief, Defendant has known of the existence of the '102 Patent, and its acts of infringement have been willful and/or in disregard for the '102 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct,

but provides neither the information referenced nor any facts supporting his belief. Dkt. 1 ¶ 25. As already shown *supra*, Mr. Parker has failed to allege any facts supporting Reviver's knowledge of the Patent-in-Suit, or knowledge of infringement, prior to the service of the Complaint.

As such, Mr. Parker cannot plausibly allege willful infringement. *Fluidigm Corp.*, 2020 WL 408988, at *5 ("the complaint does not allege knowledge of the [patent-in-suit] before the September 2018 letter, thus it cannot plausibly allege willful infringement any earlier").

**IV. CONCLUSION**

For the foregoing reasons, Reviver respectfully requests that the Court grant its Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim.

Dated: March 30, 2020

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Michael E. Zeliger*
MICHAEL E. ZELIGER
AUDREY LO
Attorneys for Defendant REVIVERMX, INC.

# Exhibit C

**From:** Harold Parker <haroldcparker.dtts@outlook.com>
**Sent:** Thursday, April 23, 2020 4:26 AM
**To:** trojan@patentrademark.com
**Cc:** Zeliger, Michael E.; Lo, Audrey; dcpkeys@gmail.com; Harold Parker
**Subject:** Re: Parker v. ReviverMx, Inc., USDC Case No. 20-cv-00735, Northern District of California, Oakland.Parker v. ReviverMx, Inc., No. 3:20-cv-00735 (N.D. Cal.)

*** EXTERNAL EMAIL ***

Good Morning Joe,

Due to the Corona Virus Pandemic and other matters I've spoken with Coleman Watson's law firm in regards to my decision to proceed with the lawsuit. The defendant will be hearing from someone soon.

Thanks,

Harold Parker
919-609-2346

---

**From:** Harold Parker <haroldcparker.dtts@outlook.com>
**Sent:** Wednesday, April 22, 2020 9:51 AM
**To:** trojan@patentrademark.com <trojan@patentrademark.com>
**Cc:** michael.zeliger@pillsburylaw.com <michael.zeliger@pillsburylaw.com>; audrey.lo@pillsburylaw.com <audrey.lo@pillsburylaw.com>; Harold Parker <haroldcparker.dtts@outlook.com>; dcpkeys@gmail.com <dcpkeys@gmail.com>
**Subject:** RE: Parker v. ReviverMx, Inc., USDC Case No. 20-cv-00735, Northern District of California, Oakland.Parker v. ReviverMx, Inc., No. 3:20-cv-00735 (N.D. Cal.)

---

**Good Morning Joe,**

Thank you **for attempting to reach out to Reviver in order to negotiate a settlement. Since they are not interested in responding at this time we will proceed with the lawsuit. Someone will be in touch with them soon.**

Sincerely,

Harold C Parker Sr.
DTTS - Owner/Inventor
919-609-2346

**From:** "Zeliger, Michael E." <michael.zeliger@pillsburylaw.com>
**Date:** Tuesday, April 21, 2020 at 1:44 PM
**To:** "R. Joseph Trojan" <trojan@patentrademark.com>
**Cc:** "Lo, Audrey" <audrey.lo@pillsburylaw.com>
**Subject:** RE: Parker v. ReviverMx, Inc., USDC Case No. 20-cv-00735, Northern District of California, Oakland.Parker v. ReviverMx, Inc., No. 3:20-cv-00735 (N.D. Cal.)

Reviver is not interested in responding at this time.

**Michael E. Zeliger** | Partner
Pillsbury Winthrop Shaw Pittman LLP
2550 Hanover Street | Palo Alto, CA 94304-1115
t +1.650.233.4069
michael.zeliger@pillsburylaw.com | website bio

# Exhibit D

Coleman W. Watson, Esq. (SBN 266015)
coleman@watsonllp.com
WATSON LLP
601 S. Figueroa Street, Suite 4050
Los Angeles, CA 90017
Telephone: 213.228.3233
Facsimile: 213.330.4222

*Attorneys for Plaintiff,*
*Harold Parker*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

HAROLD PARKER, individually,

Plaintiff,

vs.

REVIVERMX, INC.,

Defendant.

Case No.: 3:20-cv-735

**NOTICE OF VOLUNTARY DISMISSAL**

Plaintiff, HAROLD PARKER, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), hereby voluntarily dismisses this action, without prejudice, with each party to bear its own attorneys' fees and expenses in this action.

**DATED** on April 24, 2020

Respectfully submitted,

WATSON LLP

*/s/ Coleman Watson*
**Coleman W. Watson, Esq.**
California Bar No. 266015
Florida Bar. No. 0087288
Georgia Bar No. 317133
New York Bar No. 4850004

coleman@watsonllp.com
docketing@watsonllp.com

**WATSON LLP**
601 S. Figueroa Street, Suite 4050
Los Angeles, CA 90017
Telephone: 213.228.3233
Facsimile: 213.330.4222

*Attorneys for Plaintiff, Harold Parker*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 24, 2020, pursuant to Fed. R. Civ. P. 5, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send an electronic notice to the following lead counsel of record in this proceeding:

Michael E. Zeliger
Michael.zeliger@pillsburylaw.com
Audrey Lo
Audrey.lo@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman, LLP
2550 Hanover Street
Palo Alto, CA 94304-1115
Tel. (650) 233-4500
Fax (650) 233-4545

*/s/ Coleman Watson*
Coleman Watson, Esq.

# Exhibit E

**Harold King Soul-Parker**
https://m.youtube.com/watch?v=176g_URBzIQ&feature=youtu.be



YOUTUBE.COM
Reviver Auto Stole the RPlate. Harold C. Parker Sr. the original...

Like · Reply · 25w

**Harold King Soul-Parker**
Boston Neville is a thief and liar. He is not the original creator of the rPlate. He copied the original inventor's work. Yours truly Harold C. Parker is the original inventor of the world's first digital license plate. Not to worry because I will be exposing you to the world. For all those that is watching this review click on this Youtube link as I explain and demonstrate my invention which was created in 2004 granted a patent in 2006. https://youtu.be/176g_URBzIQ.



YOUTUBE.COM
Reviver Auto Stole the RPlate. Harold C. Parker Sr. the original...

Like · Reply · 3w

Write a comment...

# Exhibit F

**Harold C Parker Sr.** • 2nd
Inventor of the World's First Digital License Plate. United States Patent Number ...
1d •

I'm sharing this post again because I refuse to allow a thief to get away with taking credit for my life's work. If anyone would like to interview me I'll be more than happy to. This is my legacy for my children that's at state.

**Harold C Parker Sr.** • 2nd
Inventor of the World's First Digital License Plate. United States Patent Number - 7...
1w •

I am the inventor of the world's first digital license plate. On Feb 27, 2004 I filed for patent #7,096,102 and was granted it on Aug 22, 2006. In 2009 a man named Boston Neville shown in the pics with his wife started a company called #ReviverAuto and stole credit for my work. They received 25.5 million dollars in funding from investors and manufactured my invention. I was at the age of 24 when I first invented my digital license plate. They took advantage by using powerful people that would promote them but yet try to sweep me exposing them under the rug. Please watch Part 2 of my video https://lnkd.in/gy5ZRFN when I first introduced my invention to the world in 2006 and compare it to the video https://lnkd.in/gbh9q-t which he claimed credit for my life's work. I had an attorney but he all of a certain had a stroke. Its been an up hill battle trying to get justice served. Please help me by sharing this post and making it go viral. If you have any questions or comments please do so or inbox me. Thank you in advance.












Like Comment Share Send

# Exhibit G

US007096102B1

(12) **United States Patent**
**Parker, Sr.**

(10) **Patent No.: US 7,096,102 B1**
(45) **Date of Patent: Aug. 22, 2006**

(54) **MOTOR VEHICLE LICENSE PLATE WITH INTEGRAL WIRELESS TRACKING AND DATA DISSEMINATION DEVICE**

(76) Inventor: **Harold C. Parker, Sr.**, 605 B Peter Ct., Raleigh, NC (US) 27610

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/787,931**

(22) Filed: **Feb. 27, 2004**

(51) **Int. Cl.**
***B60R 25/10*** (2006.01)

(52) **U.S. Cl.** ...................................... **701/36**; 340/426.1

(58) **Field of Classification Search** .................... 701/1, 701/36; 342/357.07; 340/426.1, 426.18
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,001,822 A 1/1977 Sterzer
5,105,179 A 4/1992 Smith
5,196,846 A 3/1993 Brockelsby et al.
5,579,008 A 11/1996 Hulderman et al.
5,621,571 A 4/1997 Bantli et al.
5,657,008 A * 8/1997 Bantli ........................ 340/933
D396,439 S 7/1998 Turnquest
6,404,327 B1 * 6/2002 Naddeo ................. 340/426.11
6,876,296 B1 * 4/2005 Talmadge et al. ........ 340/10.42
2003/0112242 A1 * 6/2003 Vitale et al. ................ 345/440
2003/0200227 A1 * 10/2003 Ressler .................... 707/104.1
2004/0189493 A1 * 9/2004 Estus et al. ................ 340/988

* cited by examiner

*Primary Examiner*—Michael J. Zanelli
(74) *Attorney, Agent, or Firm*—John D. Gugliota; Olen L. York, III

(57) **ABSTRACT**

An apparatus that provides for the wireless receiving, storing and dissemination of digital data as part of a motor vehicle license plate is disclosed. The apparatus allows for the querying of data typically associated with driving privileges, such as social security numbers, insurance policy information, addresses, registration information, driving records, driving restrictions and the like. Data would be passed wirelessly upon receipt of a valid request signal from a law enforcement vehicle. Such reporting is viewed as a means to reduce data entry and eliminate errors thus freeing the law enforcement officer to perform other duties, or perform multiple queries in the same time as it takes to perform one in a conventional manner. Remote inputs from alarm systems and panic buttons allow for activation of the transmitter portion to alert law enforcement authorities of a possible crime. Such emergency reporting can only be acknowledged and deactivated by authorized authorities.

**10 Claims, 3 Drawing Sheets**






*Fig. 1*


60
70
65
72
50
50
RN1-1596
40
10
55
50
45
50
55

*Fig. 2*


75
80
90
95
60
85
40
70
100
POWER SUPPLY
ALARM MODULE
105
110
TRANSMITTER
115
MULTI-PLEXER
120
140
CONTROLLER
130
RECEIVER
125
MEMORY BLOCK
135

*Fig. 3*


BEGIN OPERATION
145
HAS ACCESS SIGNAL BEEN RECEIVED ?
YES
NO
150
DATA RECEIVE OR TRANSMIT ?
TRANSMIT
RECEIVE
155
BEGIN OPERATION
180
CHECK FOR PROPER AUTH.
160
HAS ACCESS SIGNAL BEEN RECEIVED?
185
YES
NO
IS AUTH. CORRECT
165
NO
YES
STORE DATA IN MEMORY
190
RECALL DATA FROM MEMORY
170
TRANSMIT DATA
175

*Fig. 4*

# MOTOR VEHICLE LICENSE PLATE WITH INTEGRAL WIRELESS TRACKING AND DATA DISSEMINATION DEVICE

## RELATED APPLICATIONS

There are no previously filed, nor currently any co-pending applications, anywhere in the world.

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates generally to wireless data transfer systems and, more particularly, to a motor vehicle license plate with integral wireless tracking and data dissemination device.

2. Description of the Related Art

Recent events in our history have reminded us how easily terrorists, criminals and others who are hiding from the law can travel about in motor vehicles. Once such people are inside the anonymity of a car or truck, they can move freely about our country with little danger of being caught. Even if they should be pulled over for a minor travel violation, they are often released without the law enforcement officer even knowing their true identity due to inadequate alerts, incompatible computer systems and often just oversight. Also, due to illegible communications, transcription errors, and the like, incorrect or incomplete license plate numbers are checked, thus allowing criminals and others to be released. Other crimes involving motor vehicles such as car-jackings, kidnaping in motor vehicles and the like are also on the rise and are almost impossible to stop other than by blind luck. Accordingly, there exists a need for a means by which license plate registrations, driver's license information, vehicle status and the like can be queried, accessed and verified without the time-consuming effort and error-prone processes afforded by current methods.

A search of the prior art did not disclose any patents that read directly on the claims of the instant invention; however, the following references were considered related:

U.S. Patent No. Des. 396,439, issued in the name of Turnquest, discloses an ornamental design for an auto license plate lock box system;

U.S. Pat. No. 4,001,822, issued in the name of Sterzer, discloses an electronic license plate for motor vehicles;

U.S. Pat. No. 5,105,179, issued in the name of Smith, discloses an electronic display license plate;

U.S. Pat. No. 5,196,846, issued in the name of Brockelsby et al., discloses a moving vehicle identification system;

U.S. Pat. No. 5,579,008, issued in the name of Hulderman et al., discloses an electronic license plate apparatus and method; and

U.S. Pat. No. 5,621,571, issued in the name of Bantli et al., discloses an integrated retro-reflective electronic display.

Consequently, there exists a continuous need for new ideas and enhancements for existing products in the electronic tracking and database transmission industry.

## SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate affixed to the motor vehicle.

An apparatus that provides for the wireless receiving, storing and dissemination of digital data as part of a motor



vehicle license plate is disclosed. The apparatus allows for the querying of data typically associated with driving privileges, such as social security numbers, insurance policy information, addresses, registration information, driving records, driving restrictions and the like. Data would be passed wirelessly upon receipt of a valid request signal from a law enforcement vehicle. Such reporting is viewed as a means to reduce data entry and eliminate errors thus freeing the law enforcement officer to perform other duties, or perform multiple queries in the same time as it takes to perform one in a conventional manner. Remote inputs from alarm systems and panic buttons allow for activation of the transmitter portion to alert law enforcement authorities of a possible crime. Such emergency reporting can only be acknowledged and deactivated by authorized authorities.

It is a feature of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate including a legacy system of vehicle identification including a license plate number and at least one registration sticker location; a strip antenna projecting from the plate, the strip antenna receiving and transmitting digital information via a radio frequency signal; an enclosure at an upper rear portion of the plate, the enclosure housing associated circuitry of the plate; an interface cable operatively coupling the enclosure to an electrical supply system of the motor vehicle; and a querying antenna provided on at least one law enforcement vehicle, the querying antenna producing a complimentary radio frequency signal interacting with the strip antenna so as to receive and transmit digital information therebetween; wherein the device provides enhanced efficiency of law enforcement queries.

It is a further feature of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate affixed to the motor vehicle, wherein operative coupling between the enclosure and the electrical supply system of the motor vehicle comprises a battery providing a source of electrical power; an overcurrent protective device, wherein the battery is routed through the overcurrent protective device and subsequently routed through a conductor of the interface cable to the enclosure; an emergency notification signal routed from an anti-theft alarm system or a panic alarm in a parallel series through the enclosure; the enclosure comprising a power supply operatively coupled to a controller, an alarm module, a transmitter, a receiver, a multiplexer and a memory block, wherein generated power bus signals are routed from the power supply to the alarm module, the transmitter, the receiver and the controller.

It is a further feature of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate affixed to the motor vehicle, wherein the controller is operatively coupled between the power supply and the alarm module, the transmitter and the receiver, the controller further coupled to the memory block, and wherein the transmitter is further coupled to the multiplexer, the multiplexer interacting with the strip antenna for transmitting and receiving digital information, and the multiplexer transmits received digital information to the controller.

It is a further feature of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate affixed to the motor vehicle, wherein said emergency notification signal is further routed through said enclosure to said alarm module that is directly coupled to said transmitter.

It is a further feature of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate affixed to the motor vehicle, wherein said memory block stores digital information of said motor vehicle and owner thereof.

It is a further feature of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate affixed to the motor vehicle, wherein said emergency notification signal is transmitted from said motor vehicle to at least one of said law enforcement vehicle.

It is a further feature of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate affixed to the motor vehicle, wherein said emergency notification signal is latched by said plate and reset only by a proper disarming signal incoming from said querying antenna.

It is a further feature of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate affixed to the motor vehicle, wherein said emergency notification signal comprises closure of an anti-theft contact integrally coupled with said anti-theft alarm system and actuated upon unauthorized tampering with said motor vehicle.

It is a further feature of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate affixed to the motor vehicle, wherein said emergency notification signal comprises closure of a panic contact integrally coupled with a panic button and actuated upon a vehicle occupant depressing said panic button.

It is a feature of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate affixed to the motor vehicle, wherein said panic button is provided in a passenger compartment of said motor vehicle.

It is a further feature of the present invention to provide an integral wireless tracking and data dissemination device for a motor vehicle comprising a license plate affixed to the motor vehicle, wherein said panic button is provided in a trunk compartment of said motor vehicle.

## BRIEF DESCRIPTION OF THE DRAWINGS

The advantages and features of the present invention will become better understood with reference to the following more detailed description and claims taken in conjunction with the accompanying drawings, in which like elements are identified with like symbols, and in which:

FIG. **1** is an overall perspective view of the motor vehicle license plate with integral wireless tracking and data dissemination device **10** according to a preferred embodiment of the present invention;

FIG. **2** is a detailed perspective view of the motor vehicle license plate with integral wireless tracking and data dissemination device **10**, according to a preferred embodiment of the present invention;

FIG. **3** is a functional interconnection diagram of the motor vehicle license plate with integral wireless tracking and data dissemination device **10**; and

FIG. **4** is a functional logic diagram of the logic sequence as used with the data acquisition and dissemination portion of the motor vehicle license plate with integral wireless tracking and data dissemination device **10**.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The best mode for carrying out the invention is presented in terms of its preferred embodiment, herein depicted within FIGS. **1** through **4**.

### DESCRIPTIVE KEY

**10** motor vehicle license plate with integral wireless tracking and data dissemination device
**15** equipped motor vehicle
**20** radio frequency signal
**25** law enforcement vehicle
**30** querying antenna
**35** complimentary radio frequency signal
**40** base structure
**45** license plate number
**50** mounting holes
**55** registration update sticker locations
**60** interface cable
**65** electronics enclosure
**70** strip antenna
**72** access hole
**75** battery
**80** overcurrent protective device
**85** emergency notification signal
**90** anti-theft contact closure
**95** panic alarm
**100** power supply
**105** alarm module
**110** direct connection
**115** transmitter
**120** multiplexer
**125** receiver
**130** controller
**135** memory block
**140** power bus signals
**145** first functional block
**150** first operational block
**155** second operational block
**160** second functional block
**165** third operational block
**170** third functional block
**175** fourth functional block
**180** fifth functional block
**185** fourth operational block
**190** sixth functional block

1. Detailed Description of the Figures

Referring to FIG. **1**, an overall perspective of the motor vehicle license plate with integral wireless tracking and data dissemination device **10**, according to a preferred embodiment of the present invention is disclosed. A plurality of equipped motor vehicles **15** such as automobiles, trucks, busses, vans, or the like, are situated in a real world driving environment as would be found on everyday streets, roads, highways, parking lots, and the like. The motor vehicle license plate with integral wireless tracking and data dissemination device **10** as provided on the equipped motor vehicle **15** is capable of producing and receiving a radio frequency signal **20**, which would be of the frequency, protocol, and power level as approved by governing bodies and is envisioned to be of the digital packet variety to allow for simultaneous and error-proof transmission. One possible frequency of use could be 9 MHZ. A law enforcement vehicle **25** envisioned to be a municipal police officer, state

officer, or a federal officer, is equipped with a querying antenna **30** which produces a complimentary radio frequency signal **35**, which interacts with the motor vehicle license plate with integral wireless tracking and data dissemination device **10** on the equipped motor vehicle **15**. It is envisioned that such data as social security numbers, insurance policy information, addresses, registration information, driving records, driving restrictions and the like, would be stored and processed by the motor vehicle license plate with integral wireless tracking and data dissemination device **10**, but is not intended as a limiting factor of the present invention. Due to the digital nature of the information being passed on the radio frequency signal **20** and the complimentary radio frequency signal **35**, any digital file such as photographs, sound files, text files and the like could be stored and transmitted. Such information would result in faster vehicle registration checks which not only frees the law enforcement officer up faster for more important duties, but results in less data entry mistakes, and allows the officer to perform more random registration checks, which may permit the apprehension of more criminals and others hiding from the law. Said apprehensions would result in not only a more safe environment for all, but would be an important benefit for homeland and/or world security.

Referring now to FIG. **2**, a detailed perspective view of the motor vehicle license plate with integral wireless tracking and data dissemination device **10** according to a preferred embodiment of the present invention, is disclosed. A base structure **40**, envisioned to be manufactured from sheet metal, provides the outward appearance of a conventional license plate. A license plate number **45** is provided in the center of the base structure **40** for use in visual observation in the conventional manner. The base structure **40** is held in place on the equipped motor vehicle **15** (as seen in FIG. **1**) by a series of four mounting holes **50**, which are spaced and located to match the typical mounting requirements of a conventional license plate. A series of registration update sticker locations **55** are located along the bottom of the base structure **40** to allow for visual indication of yearly registration updates. Such features provided by the base structure **40**, the license plate number **45**, the mounting holes **50** and the registration update sticker locations **55** are those typically afforded conventional license plates and as such, allow the motor vehicle license plate with integral wireless tracking and data dissemination device **10** to enhance such features in lieu of replacing them, allowing legacy systems which rely of the features of a conventional license plate to remain in service. An interface cable **60** is provided to connect to the electrical supply system of the equipped motor vehicle **15** and provide input signals, which will be shown in greater detail herein below. An electronics enclosure **65** is located on a rear upper section of the base structure **40** (shown via phantom lines, for purposes of illustration) which houses the associated circuitry of the motor vehicle license plate with integral wireless tracking and data dissemination device **10**, which will be shown in greater detail herein below. Finally, a strip antenna **70** is shown on the surface of the base structure **40** which allows the strip antenna **70** to receive and transmit the necessary data. The strip antenna **70** is routed through an access hole **72** thus allowing exterior access to the strip antenna **70**.

Referring next to FIG. **3**, a functional interconnection diagram of the motor vehicle license plate with integral wireless tracking and data dissemination device **10**, according to a preferred embodiment of the present invention, is depicted. Electrical power from a battery **75** is routed through an overcurrent protective device **80**, such as a fuse,



and then routed on a conductor of the interface cable **60** to the base structure **40**. An emergency notification signal **85** is routed from an anti-theft contact closure **90** and a panic alarm **95** in a parallel arrangement. The anti-theft contact closure **90** would present a contact closure in the event of a theft and would be provided from an anti-theft system or alarm, which is well known in the art. The panic alarm **95** would be located in the passenger compartment of the equipped motor vehicle **15** (as shown in FIG. **1**) or the trunk if so equipped. In the event of a car jacking or kidnaping, the authorized user or occupant of the equipped motor vehicle **15** (as shown in FIG. **1**) would activate the panic alarm **95** by pressing alarm **95**. The resultant emergency notification signal **85** would be processed by the base structure **40** as an emergency condition and broadcast to any law enforcement vehicle **25** (as shown in FIG. **1**) passing by. The signals provided by the anti-theft contact closure **90** and panic alarm **95** are latched by the base structure **40** and could only be reset from a proper incoming signal from the querying antenna **30** (as shown in FIG. **1**). The electrical power from the battery **75** is routed to a power supply **100** on the base structure **40**. The emergency notification signal **85** is routed to an alarm module **105** which has a direct connection **110** to a transmitter **115**. In such a manner, an emergency signal can be emitted regardless of the operating state of the motor vehicle license plate with integral wireless tracking and data dissemination device **10**, as the direct connection **110** will take priority. The transmitter **115** is connected to a multiplexer **120** which is then connected to the strip antenna **70**. The multiplexer **120** allows the strip antenna **70** to perform both transmitting and receiving operations. As such, the multiplexer **120** also provides an electrical connection to a receiver **125** which passes any received data onto a controller **130**, which is envisioned to be a computer controlled device. The controller **130** has access to a memory block **135** which holds the required digital data such as, but not limited to, social security numbers, insurance policy information, addresses, registration information, driving records, driving restrictions and the like. The power bus signals **140** are routed from the power supply **100** to the alarm module **105**, the transmitter **115**, the receiver **125**, and the controller **130**.

Referring finally to FIG. **4**, a functional logic diagram of the logic sequence as used with the data acquisition and dissemination portion of the motor vehicle license plate with integral wireless tracking and data dissemination device **10** is disclosed. As the emergency reporting and tracking features of the motor vehicle license plate with integral wireless tracking and data dissemination device **10** provided by the emergency notification signal **85** as aforementioned described in FIG. **3** take priority over the data acquisition and dissemination portion features, they are not included in this logic sequence. The logic begins at a first functional block **145** whereupon the motor vehicle license plate with integral wireless tracking and data dissemination device **10** is activated. Such access continues in response to a negative result at a first operational block **150**. In the event of a positive response at the first operational block **150**, the motor vehicle license plate with integral wireless tracking and data dissemination device **10** must determine if the incoming signal is a request for data from the motor vehicle license plate with integral wireless tracking and data dissemination device **10** or a request to add or update data already stored in the motor vehicle license plate with integral wireless tracking and data dissemination device **10**, as indicated by the second operational block **155**. In the event that it is a request for data, control will proceed to a second functional block **160** where the request will be authenti-

cated. This step will eliminate the possibility of hacking or other unauthorized access. The authentication process is performed at a third operational block **165** where a negative or unauthorized request will turn control over to the first functional block **145**. A positive or authorized request will recall the requested data from memory at a third functional block **170** and transmit it at a fourth functional block **175**. In the event that a request is made at the second operational block **155** to receive data, such as when updating driving records, addresses, insurance policies and the like, control would be passed to a fifth functional block **180** where verification of proper authority to change said data would be made at a fourth operational block **185**. In the case of a negative response or improper authority, control reverts to the first functional block **145**. In the case of positive or proper authority, the subject data would be stored in the memory block **135** (as shown in FIG. **3**) as depicted via a sixth functional block **190**.

It is envisioned that other styles and configurations of the present invention can be easily incorporated into the teachings of the present invention, and only one particular configuration shall be shown and described for purposes of clarity and disclosure and not by way of limitation of scope.

2. Operation of the Preferred Embodiment

The preferred embodiment of the present invention can be utilized by the common user in a simple and effortless manner with little or no training. The features and benefits of the motor vehicle license plate with integral wireless tracking and data dissemination device **10** are transparent to the normal owner and/or user of the equipped motor vehicle **15**. After purchase or distribution of the motor vehicle license plate with integral wireless tracking and data dissemination device **10** is made, it must be connected to the power supply of the vehicle as depicted in FIG. **3**. Additionally, optional connections to an anti-theft contact closure **90** or panic alarm **95** can be made, but are not required for operation. After initial programming of the motor vehicle license plate with integral wireless tracking and data dissemination device **10** via a querying antenna **30**, the motor vehicle license plate with integral wireless tracking and data dissemination device **10** is ready for use.

To use the present invention, any law enforcement vehicle **25** with the necessary querying antenna **30** could query any equipped motor vehicle **15** at any time. Such querying would be the result of a legitimate traffic stop, or of a random nature should the law enforcement vehicle **25** be looking for invalid registrations, illegal aliens, outdated insurance policies or the like. Additionally, the emergency reporting features of the invention afforded by the connection to the anti-theft contact closure **90** and the panic alarm **95** allows for the broadcast of a crime in progress and would allow the tracking of the subject equipped motor vehicle **15** via standard and well known tracking procedures. Should such an event take place, the querying antenna **30** on the law enforcement vehicle **25** would provide for the resetting of the motor vehicle license plate with integral wireless tracking and data dissemination device **10** to allow for continued use as before.

The foregoing descriptions of specific embodiments of the present invention have been presented for purposes of illustration and description. They are not intended to be exhaustive or to limit the invention to the precise forms disclosed, and obviously many modifications and variations are possible in light of the above teaching. The embodiments were chosen and described in order to best explain the principles of the invention and its practical application, to thereby enable others skilled in the art to best utilize the invention and various embodiments with various modifications as are suited to the particular use contemplated. It is intended that the scope of the invention be defined by the Claims appended hereto and their equivalents. Therefore, the scope of the invention is to be limited only by the following claims.

What is claimed is:

**1**. An integral wireless data dissemination device for a motor vehicle comprising a license plate affixed to said motor vehicle in combination with a remote querrying antenna wherein said combination comprises:

a legacy system of vehicle identification including a license plate number and at least one registration sticker location;

a strip antenna projecting from said plate, said strip antenna receiving and transmitting digital information via a radio frequency signal;

an enclosure at an upper rear portion of said plate, said enclosure housing associated circuitry of said plate;

an interface cable operatively coupling said enclosure to an electrical supply system of said motor vehicle wherein operative coupling between said enclosure and said electrical supply system of said motor vehicle comprises:

a battery providing a source of electrical power;

an overcurrent protective device, wherein said battery is routed through said overcurrent protective device and subsequently routed through a conductor of said interface cable to said enclosure;

an emergency notification signal routed from an anti-theft alarm system or a panic alarm in a parallel series through said enclosure;

said enclosure comprising a power supply operatively coupled to a controller, an alarm module, a transmitter, a receiver, a multiplexer and a memory block, wherein generated power bus signals are routed from said power supply to said alarm module, said transmitter, said receiver and said controller; and

a querying antenna provided on at least one law enforcement vehicle, said querying antenna producing a complimentary radio frequency signal interacting with said strip antenna so as to receive and transmit digital information therebetween;

wherein said device provides enhanced efficiency of law enforcement queries.

**2**. The integral wireless data dissemination device for a motor vehicle comprising a license plate affixed to said motor vehicle in combination with a remote querrying antenna of claim **1**, wherein said controller is operatively coupled between said power supply and said alarm module, said transmitter and said receiver, said controller further coupled to said memory block, and wherein said transmitter is further coupled to said multiplexer, said multiplexer interacting with said strip antenna for transmitting and receiving digital information, and said multiplexer transmits received digital information to said controller.

**3**. The integral wireless data dissemination device for a motor vehicle comprising a license plate affixed to said motor vehicle in combination with a remote querrying antenna of claim **1**, wherein said emergency notification signal is further routed through said enclosure to said alarm module that is directly coupled to said transmitter.

**4**. The integral wireless data dissemination device for a motor vehicle comprising a license plate affixed to said motor vehicle in combination with a remote querrying

antenna of claim **1**, wherein said memory block stores digital information of said motor vehicle and owner thereof.

**5**. The integral wireless data dissemination device for a motor vehicle comprising a license plate affixed to said motor vehicle in combination with a remote querrying antenna of claim **1**, wherein said emergency notification signal is transmitted from said motor vehicle to at least one of said law enforcement vehicle.

**6**. The integral wireless data dissemination device for a motor vehicle comprising a license plate affixed to said motor vehicle in combination with a remote querrying antenna of claim **1**, wherein said emergency notification signal is latched by said plate and reset only by a proper disarming signal incoming from said querying antenna.

**7**. The integral wireless data dissemination device for a motor vehicle comprising a license plate affixed to said motor vehicle in combination with a remote querrying antenna of claim **6**, wherein said emergency notification signal comprises closure of an anti-theft contact integrally coupled with said anti-theft alarm system and actuated upon unauthorized tampering with said motor vehicle.

**8**. The integral wireless data dissemination device for a motor vehicle comprising a license plate affixed to said motor vehicle in combination with a remote querrying antenna of claim **6**, wherein said emergency notification signal comprises closure of a panic contact integrally coupled with a panic button and actuated upon a vehicle occupant depressing said panic button.

**9**. The integral wireless data dissemination device for a motor vehicle comprising a license plate affixed to said motor vehicle in combination with a remote querrying antenna of claim **8**, wherein said panic button is provided in a passenger compartment of said motor vehicle.

**10**. The integral wireless data dissemination device for a motor vehicle comprising a license plate affixed to said motor vehicle in combination with a remote querrying antenna of claim **8**, wherein said panic button is provided in a trunk compartment of said motor vehicle.

* * * * *